**SO ORDERED.**

**SIGNED this 22 day of January, 2018.**

_____
**David M. Warren
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

IN RE:                                                                        CASE NO. 17-00615-5-DMW

RANDI SULLIVAN WOLK
                                                                                    CHAPTER 13
            DEBTOR

## ORDER REGARDING OBJECTION TO CLAIM

This matter comes on to be heard upon the Amended Objection to Claim filed by Randi Sullivan Wolk ("Debtor") on July 19, 2017 and the Response to Debtor's Objection to Claim filed by Jonathan Gardner Wolk ("Mr. Wolk") on August 18, 2017. The court conducted a hearing in Raleigh, North Carolina on November 1, 2017. William F. Braziel III, Esq. appeared for the Debtor, and Cort I. Walker, Esq. appeared for Mr. Wolk. The court ruled at the conclusion of the hearing that Mr. Wolk would have an allowed unsecured claim in the amount of $105,221.23; however, after the court's *sua sponte* consideration of 11 U.S.C. § 502(e), that ruling is amended and revised as provided herein. Based upon the pleadings, the evidence presented, the arguments of counsel and the case record, the court makes the following findings of fact and conclusions of law:

1.      This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334.  The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2.      The Debtor filed a voluntary petition ("Petition") for relief under Chapter 13 of the United States Bankruptcy Code on February 7, 2017 ("Petition Date").

3.      The Debtor and Mr. Wolk were married on August 1, 1993 and separated in December, 2012.  The Debtor and Mr. Wolk executed a Separation Agreement and Property Settlement ("Agreement") dated June 24, 2013, pursuant to which the Debtor took possession of the parties' former marital residence located at 14100 Wyndfield Circle, Raleigh, NC 27615 ("Property").

4.      At the time of the Agreement, the Property served as collateral for a loan from North Carolina State Employees' Credit Union ("SECU") in the approximate amount of $569,041.00 and as collateral for a loan from Capital Bank in the approximate amount of $94,498.00.  SECU held a first priority deed of trust, and Capital Bank held a second priority deed of trust upon the Property. The Debtor and Mr. Wolk were makers of the loans with SECU and Capital Bank, having joint and several liability for those loans.

5.      The Agreement required the Debtor to continue servicing the debts in favor of SECU and Capital Bank until the Debtor was able to refinance those loans.  Pursuant to Section H of the Agreement, the parties agreed

> to save and hold harmless the other party . . . from and against any and all liability in connection with any indebtedness assumed under the terms of this Agreement and [to] hereby indemnify and hold the other party harmless against any and all harm, expense, loss or other damage, including attorney's fees, in connection therewith.

2

6. The Debtor did not refinance the loans and ultimately defaulted on the obligations to SECU and Capital Bank. Prior to the Petition Date, SECU foreclosed under its deed of trust. Capital Bank, realizing nothing from the foreclosure sale, subsequently filed an action against the Debtor and Mr. Wolk in Wake County, North Carolina ("Capital Bank Action") seeking payment of the balance due from the Debtor and Mr. Wolk under the Capital Bank loan.

7. The filing of the Petition stayed the Capital Bank Action as to the Debtor and Mr. Wolk pursuant to 11 U.S.C. §§ 362 and 1301, respectively. The court entered an Order on August 14, 2017 granting Capital Bank relief from the 11 U.S.C. § 1301 "codebtor" stay to proceed with the Capital Bank Action against Mr. Wolk.

8. Capital Bank filed a proof of claim asserting an unpaid balance of $105,221.23 as of the Petition Date. The Debtor's Chapter 13 plan proposes to pay a total of $1,000.00 to be divided *pro rata* among the Debtor's unsecured creditors. Mr. Wolk testified that he has not made any payment to Capital Bank since he and the Debtor separated.

9. Mr. Wolk filed a proof of claim on June 9, 2017 asserting a total claim of $150,221.23 comprising three elements as follows:

    a. The sum of $105,221.23 for the Capital Bank loan owed through indemnification;

    b. The sum of $20,000.00 for damages to Mr. Wolk's "credit report" caused by the Debtor's default on her loan payment obligations under the Agreement; and

    c. The sum of $25,000.00 for adverse tax consequences related to the "issuance of Form 1099-A by SECU" from the foreclosure of the Property by SECU. Based on the Debtor's statements at the hearing, the Form 1099-A purportedly indicates Mr. Wolk may have income attributed to cancelation of the debt owed to SECU.

Indemnification Claim

10. The amount of $105,221.23 that Mr. Wolk seeks from the estate arises from the contractual indemnification as evidenced by the Agreement. This indemnification-related claim is affected by 11 U.S.C. § 502(e), which states as follows:

> (1) Notwithstanding subsections (a), (b), and (c) of this section and paragraph (2) of this subsection, the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that—
> (A) such creditor's claim against the estate is disallowed;
> (B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution; or
> (C) such entity asserts a right of subrogation to the rights of such creditor under section 509 of this title.

11 U.S.C. § 502(e).

11. For § 502(e)(1)(B) to apply, three elements must be present. Those elements are as follows: "(1) the claim must be one for reimbursement or contribution; (2) the entity asserting the claim for reimbursement or contribution must be 'liable with the debtor' on the claim; and (3) the claim must be contingent at the time of its allowance or disallowance." *In re Provincetown-Boston Airlines, Inc.*, 72 B.R. 307, 309 (Bankr. M.D. Fla. 1987).

12. The portion of Mr. Wolk's claim dealing with the Capital Bank loan is for reimbursement from the Debtor for what he may have to pay Capital Bank, satisfying the first element. "Claims for reimbursement [as recited in § 502(e)(1)] include indemnity claims." 4 *Collier on Bankruptcy* ¶ 502.06 (16th ed. 2009) (citing *In re Drexel Burnham Lambert Group, Inc. v. Sorenson*, 146 B.R. 92, 96 (Bankr. S.D.N.Y. 1992) ("[C]ontingent claims for indemnity are covered by § 502(e)(1)(B) where the claimant is co-liable with the debtor on the underlying claim")).

13.     Mr. Wolk is a co-maker of the Capital Bank loan, satisfying the second element that is required for § 502(e)(1)(B) to apply to a claim.  As for the third element, the claim is still contingent.  Unless and until Mr. Wolk actually pays the debt to Capital Bank, any claim for reimbursement remains contingent.  A claim for contribution from a co-maker of a debt is very similar outside of the bankruptcy context.  "[A] party having joint and several liability who pays the instrument is entitled to receive from any party having the same joint and several liability contribution in accordance with applicable law."  N.C. Gen. Stat. § 25-3-116(b) (1995).  "Because of the joint and several nature of a maker's obligation under a note, when one co-maker pays the instrument [sic] he is entitled to contribution from other co-makers." *Grimes v. Grimes*, 267 S.E.2d 372, 374 (N.C. App. 1980).  Accordingly, unless and until Mr. Wolk pays the Capital Bank loan, his right to contribution does not arise; therefore, his claim against the Debtor is contingent.

14.     Similarly, Mr. Wolk's liability to Capital Bank for the entire amount of Capital Bank's claim, while almost a certainty in the future, is still contingent, because it is based upon the failure of the Debtor to pay the Capital Bank obligation.  While almost certainly that claim will not be paid by the Debtor beyond a negligible amount through her Chapter 13 plan, the Debtor's indemnification-related liability to Mr. Wolk remains contingent.  "The contingency contemplated by § 502(e)(1)(B) relates to both payment and liability." *In re Drexel Burnham Lambert Group, Inc*. 148 B.R. 982, 986 (Bankr. S.D.N.Y. 1992) (citations omitted).  Unless and until the liability become finalized, Mr. Wolk has only a contingent claim against the estate.

15.     This present case is similar to *Denke v. PNC Bank, N.A.* (*In re Denke*), 524 B.R. 644 (Bankr. E.D. Va. 2015), in which the debtor, Mr. Denke, and his non-fling ex-spouse, Ms. Denke, were obligated to PNC Bank, N.A. ("PNC") on a loan secured by a first priority deed of trust upon the former marital residence.  The Denkes were also obligated to Citicorp on a loan that

5

was secured by a second priority deed of trust upon the former marital home. The Denkes also entered into a separation agreement in which the debtor, Mr. Denke, agreed to assume responsibility for the PNC and Citicorp debt and hold Ms. Denke, the non-filing co-maker, harmless from any liability for that indebtedness. The debtor surrendered the residence in his confirmed Chapter 13 case, and neither PNC nor Citicorp filed a deficiency claim prior to the bar date. Pursuant to 11 U.S.C. § 501(b) and Rule 3005 of the Federal Rules of Bankruptcy Procedure, Ms. Denke, the non-debtor, filed claims on behalf of PNC and Citicorp in order for them to participate in the distribution of the Chapter 13 plan payments. She also filed a claim in her own name equal to the amounts of the PNC and Citicorp claims, reasoning that Mr. Denke – and not she – became primarily liable on those debts as a result of the indemnification provision in the separation agreement. Judge Kevin R. Huennekens disallowed Ms. Denke's claim, stating that "[Ms. Denke's claim] duplicates the very same liability asserted by Ms. Denke on behalf of PNC Bank and Citicorp . . . ." *Id*. at 654.

16. Mr. Wolk's claim for $105,221.23 cannot be allowed in light of 11 U.S.C. § 502(e). If Mr. Wolk pays the amount due to Capital Bank, he will then have a claim against the estate. That claim may arise from an assignment of the Capital Bank loan, and in that case, the Capital Bank proof of claim may be assigned to Mr. Wolk. Mr. Wolk will then be the holder of that filed claim in this case. In the alternative, Capital Bank may elect to mark the promissory note paid and satisfied. In that case, Mr. Wolk will then be able to assert the amount paid in the form of contribution. To allow for that possibility, Mr. Wolk will have an allowed claim of $1.00, and that claim may be amended to include the claim for contribution for the payment of the Capital Bank loan. The court notes, though, that unless Mr. Wolk satisfies the claim of Capital Bank in full, any

claim for reimbursement or contribution will be subordinate to Capital Bank's claim against the Debtor. *See* 11 U.S.C. § 509(c).

### Credit Report Damage Claim

17.    Mr. Wolk has claimed damages from his "damaged credit report" in the amount of $20,000.00. At the hearing Mr. Wolk testified that he had applied for credit card and automobile loans totaling an estimated $20,000.00, and those credit applications had been denied because of the Debtor's default on the SECU and Capital Bank loans. Other than his testimony, Mr. Wolk did not provide any documentation or other support to establish the reasons for the denial of the credit applications. The failure to provide any supporting evidence of the credit denial and damages arising therefrom prevents the court from recognizing the damages claimed, and that portion of the claim will be disallowed in full.

### Tax Consequences Claim

18.    Mr. Wolk alleges that he will suffer adverse tax consequences from the foreclosure of the Property and potential forgiveness of debt income. Mr. Wolk relies on the Internal Revenue Service Form 1099-A issued by SECU. The Form 1099-A only advised Mr. Wolk and the Debtor[1] that SECU acquired the Property serving as security for its loan and provided the balance of outstanding principal owed to SECU and the fair market value of the Property. The Form 1099-A reflects that SECU acquired the Property on February 11, 2016 for $581,953.00, and the outstanding principal balance at that time was $570,276.67. SECU advised Mr. Wolk and the Debtor that they "may have reportable income or loss because of such acquisition . . . ." Mr. Wolk has only speculated that he will have taxable income relating to the foreclosure of the Property.

---

[1] According to a Request for Copy of Notice of Sale attached to Capital Bank's proof of claim, Mr. Wolk, the Debtor, Stanley Edward Sullivan, Jr. and Frances W. Sullivan executed the deed of trust pursuant to which SECU foreclosed upon the Property. The Form 1099-A is addressed to Mr. Wolk and also appears to be include Stanley Edward Sullivan, Jr.'s name.

Based upon the date of the foreclosure in 2016,[2] Mr. Wolk should have known the financial consequences of the foreclosure with respect to his obligation to SECU at the time of the hearing; however, he has not provided the court with an Internal Revenue Service Form 1099-C from SECU, if that form exists, which would show cancelation of debt income.  Mr. Wolk's speculative claim is insufficient for an allowed claim against the estate.  If Mr. Wolk can establish that he has suffered damages in the form of additional taxes from the failure of the Debtor to uphold her bargain in the Agreement, he may amend his claim to establish those damages.  At this time Mr. Wolk has not carried his burden to prove the amount of this portion of his claim, and this portion should be denied in full; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1. Mr. Wolk shall have a general unsecured claim against the estate in the amount of $1.00, and the balance of the claim shall be disallowed; and

2. Mr. Wolk shall be allowed to amend that claim if the circumstances change and he is able to substantiate the amount of his claim consistent with this Order.

END OF DOCUMENT

---

[2] Mr. Wolk testified at the hearing on November 1, 2017 that the Property sold "this year," but that testimony contradicts the date of acquisition listed on the Form 1099-A, as well as the indication on that form that the information pertained to the calendar year 2016.